

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**ORLANDO DIVISION**

Case No. *6:12-cv-665-ORL-22DAB*

FREEDOM ENVIRONMENTAL SERVICES, INC.,
a Delaware Corporation,

       Plaintiff,

v.

MICHAEL BORISH,
COLONIAL STOCK TRANSFER COMPANY, INC.,
BRETT ROWLAND,
MARC BARHONOVICH,
REGINALD M. BERTHIAUME and
JOHN DOES 1 THROUGH 5,

       Defendants.

_____/

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, FREEDOM ENVIRONMENTAL SERVICES, INC., a Delaware Corporation (hereinafter, "Plaintiff" or "FREEDOM"), sues Defendants, MICHAEL BORISH, a Florida resident, ("BORISH"), COLONIAL STOCK TRANSFER COMPANY, INC., a Utah Corporation ("COLONIAL"), BRETT ROWLAND, a Florida resident ("ROWLAND"), MARC BARHONOVICH, a Florida resident ("BARHONOVICH"), REGINALD M. BERTHIAUME, a Florida resident ("BERTHIAUME") and JOHN DOES 1 THROUGH 5 and alleges as follows:

**Summary of Case**

1.      This case involves a scheme effected by BORISH, COLONIAL, ROWLAND, BARHONOVICH, BERTHIAUME and JOHN DOES 1 THROUGH 5 (who are stock promoters, marketers, 'consultants' and active co-conspirators) wherein these defendants -- led by BORISH -- hijacked the corporate entity and business operations of FREEDOM, raided its coffers and improperly issued millions of shares of stock in FREEDOM to themselves, as well as individuals claiming to be 'promoters', 'marketers' and 'consultants' of BORISH (such as BARHONOVICH and BERTHIAUME) so that he/they could pocket the funds, dilute the business interest of the true owners/shareholders of the company and use FREEDOM as their own personal piggy bank.  As set forth below, FREEDOM asserts claims against these defendants for securities fraud, conversion, civil theft, civil conspiracy and breach of fiduciary duties.  FREEDOM seeks both damages as well as injunctive and declaratory relief.

**The Parties**

1.      Plaintiff, FREEDOM, is a Delaware corporation with its principal place of business in New Castle County, Delaware.

2.      Defendant, BORISH, is a Florida citizen and is otherwise *sui juris*.

3.      Defendant, COLONIAL, is a Utah corporation with its principal place of business in Salt Lake County, Utah.  COLONIAL is the stock transfer agent for FREEDOM.

4.      Defendant, ROWLAND, is a Florida citizen and is otherwise *sui juris*.

5.      Defendant, BARHONOVICH, is a Florida citizen and is otherwise *sui juris*.

2

6.    Defendant, BERTHIAUME, is a Florida citizen and is otherwise *sui juris*.

7.    The "John Doe" defendants are individuals or companies who claim to be stock 'promoters', 'marketers' and 'consultants' of FREEDOM and who are active co-conspirators of one of more of the other defendants.   FREEDOM will amend this complaint to specially name said individuals or entities once they have been identified through discovery.

### Jurisdiction and Venue

8.    This Court has jurisdiction pursuant to:

  a.    28 U.S.C. § 1332 (diversity of citizenship); and

  b.    28 U.S.C. § 1331; 15 U.S.C. § 78aa (federal question/federal securities fraud).

  This court may exercise supplemental jurisdiction over all state-law claims stated herein under 28 U.S.C. § 1367.

9.    The amount in controversy exceeds $75,000, exclusive of interest and costs.

10.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 78aa.

11.   All conditions precedent to the bringing of this action have occurred, been performed or have been otherwise waived.

### General Allegations

12.   Defendants' scheme -- which was masterminded by BORISH -- started in the summer of 2010.   Prior to that summer, BORISH was the Chief Executive Officer, President, Secretary and Sole Director of FREEDOM.   FREEDOM is, and for many

3

years was, a publically-traded company which trades under the stock ticker symbol FRDM on the over-the-counter QB trading platform ("OTC"). However, at that time (and for some time prior to that), FREEDOM had little or no business and, in fact, FREEDOM had net losses for the six months ending June 30, 2010 and 2009 of $2,923,556 and $479,766, respectively and accumulated net loss of $20,862,261 and $17,938,705, respectively. During and prior to July 2010, FREEDOM also had inadequate working capital to maintain or develop its operations and was dependent upon funds from private investors and the support of certain stockholders.

13.     In contrast, prior to the summer of 2010, B&P Environmental Services, LLC ("B&P") was a privately held company. B&P was the holding company which owned all of the issued and outstanding shares of Brownies WasteWater Solutions, Inc. ("Brownies"). Brownies was engaged in the Waste Water management business and did business using the trade name 'Brownies.' Also in contrast to FREEDOM, prior to July 2010, B&P/Brownies was a fully functioning and profitable business which, in 2009, had gross business exceeding $4,000,000 and a net profit exceeding $250,000. Brownies (through various corporate entities) has serviced Central Florida since 1948. Prior to summer of 2010, the private owners of B&P/Brownies were contemplating 'taking the company public' and, instead of undertaking an initial public offering (IPO) or self registration process, B&P/Brownies and FREEDOM structured a deal similar to a reverse merger whereby the result would be the merger of the operations of B&P/Brownies into the publically traded company.

14.     The transaction was effectuated through the execution of a Purchase Agreement between B&P/Brownies (as well as its private owners/members/shareholders)

on the one hand, and FREEDOM and BORISH, on the other. The Purchase Agreement was executed on July 18, 2010. A copy of the Purchase Agreement is attached hereto as Exhibit A.

15.     The substance of the Purchase Agreement and acquisition was that the sellers (the owners of the privately-held B&P/Brownies) would sell their interests to FREEDOM and, in return, the sellers would receive the majority of the outstanding and issued stock of FREEDOM. It was further agreed that these sellers would be granted "voting control" of FREEDOM through the election of an expanded Board of Directors. The Purchase Agreement also contained other material representations and warranties which were made by BORISH.

16.     In other words, pursuant to the Purchase Agreement, FREEDOM acquired all of the member interests of B&P as well as all of the issued and outstanding shares of Brownies and, in exchange, the prior owners of B&P/Brownies received a majority of the shares of FREEDOM as well as "voting control" of the Board of Directors of this publically-traded entity. By virtue of this acquisition, FREEDOM (which previously had little or no real business operations) acquired all of the business operations and significant assets of B&P/Brownies. Thus, the business operations of B&P/Brownies was now to be part of a publically-traded company.

17.     In addition, at the time the Purchase Agreement was executed, B&P/Brownies had over $200,000 in its bank accounts as well as current receivables of approximately $285,000.

18.     In the Purchase Agreement, FREEDOM and BORISH represented to B&P/Brownies (and the owners of B&P/Brownies) that certain shares of common voting

stock of FREEDOM previously issued to BORISH would be reduced such that BORISH would own/control a total of 15,000,000 shares.   FREEDOM and BORISH also represented in the Purchase Agreement that the total outstanding common voting stock of FREEDOM at the time of closing would not exceed 26,000,000 shares (including the 15,000,000 held by BORISH).  Accordingly, to effectuate the transfer of "voting control" over FREEDOM to the prior owners/principals/members of B&P/Brownies, FREEDOM was to issue (and did issue) a total of 48,000,000 shares of common voting stock in FREEDOM as follows:

      a.    15,000,000 shares of common voting stock to Harvey Blonder;

      b.    15,000,000 shares of common voting stock to Gary A. Goldstein and Anita Goldstein, as tenants by the entireties and;

      c.    15,000,000 shares of common voting stock to Michael Ciarlone; and

      d.    3,000,000 shares of common voting stock to Robin and Robert Bailey, as tenants by the entireties.

19.    As a result, in exchange for FREEDOM's acquisition of the assets/business operations of B&P/Brownies, the prior owners/principals/members of B&P/Brownies would control 48,000,000 of the 74,000,000 shares. Additionally, including BORISH, the five principles (BORISH, Blonder, Goldstein, Ciarlone and Bailey) would own a total of 63,000,000 of the authorized and issued 74,000,000 shares of FREEDOM stock (thus, 11,000,000 shares would be in the "public float").

20.    BORISH recognized that this acquisition/reverse merger would result in his losing operation control over FREEDOM.  Indeed, he reported this to the Securities

and Exchange Commission ("SEC") when he submitted a Form 10-Q to the SEC on August 20, 2010 (shortly after the Purchase Agreement was executed) wherein FREEDOM reported that as a result of the subject Purchase Agreement "... the recipients of the Share Consideration represent, in aggregate, over fifty percent of the issued and outstanding shares of the company [FREEDOM], resulting in a change of control of the Company." See Exhibit B (at page 21). The Form 10-Q was signed by BORISH.

21.     However, BORISH never released control of the company.  Instead he seized control of the operations of B&P/Brownies (which operations constituted the primary operations of FREEDOM) and seized control of the money.  He also continued to issue millions of shares of stock in FREEDOM, without authorization, to anyone who would pay him for these shares.

22.     In order to accomplish his scheme, BORISH enlisted the assistance of others associated with FREEDOM and those who claim to be 'promoters', 'marketers' and 'consultants.'  Once FREEDOM obtains further information or the identify of these individuals or business entities, the complaint will be amended.  These individuals and/or business entities fully cooperated and conspired with BORISH and, together they carried out the scheme hatched by BORISH.

23.     While BORISH did not fulfill his responsibilities and promises under the terms of the agreement (including releasing control to the prior owners of B&P/Brownies), BORISH did not hesitate to (a) change the bank accounts of B&P/Brownies, which were formerly under the exclusive control of Mr. Blonder and Mrs. Bailey, so that he/BORISH (and/or others that BORISH could control and direct) was/were the sole signatory and authorized users of the account (at the time, these

accounts had a balance in excess of over $200,000); (b) illegitimately take over control of the operations of FREEDOM which now included real business operations which were formerly under the control of B&P/Brownies; (c) unlawfully issue millions of additional shares in FREEDOM to his cronies including stock promoters, marketers, family members and friends; (d) award employment contracts to himself and Mr. Ciarlone at annual salaries of $190,000 and $185,000, respectively; (e) file false documents with the state of Florida changing the corporate information for B&P/Brownies to reflect that BORISH and Michael Ciarlone are the only officers/directors of B&P/Brownies; (f) file false and fraudulent documents with the SEC also representing that he was the sole officer and director of FREEDOM, B&P and Brownies; (g) falsify corporate documentation; and (h) cease cooperation with the remainder of the Board of Directors. In short, BORISH stole the corporate identity of FREEDOM and utilized the company, its assets and business operations of FREEDOM (which included that real business operations of B&P/Brownies) as if he were still the sole director, officer and owner.

24.    In late December 2010, B&P, Brownies, Harvey Blonder, Gary Goldstein and Robin Bailey commenced litigation against FREEDOM and BORISH in the Circuit Court for the Ninth Judicial Circuit in and for Orange County, Florida which was assigned case no. 2010-CA-026477-O.   The lawsuit alleged that FREEDOM and BORISH made material false statements and refused to comply with and/or violated the terms of the Purchase Agreement.

25.    A few months later, in and around May/June 2011, the parties settled their dispute. Memorializing the terms of the settlement are:

a.      the Settlement Agreement and General Mutual Release (the "Settlement Agreement") executed by BORISH, Harvey Blonder, Gary Goldstein, Michael Ciarlone and Robin Bailey (*see* Exhibit C);

b.      Minutes of a May 18, 2011 shareholder meeting conducted in lieu of an annual or special meeting of shareholders which was executed by BORISH, Harvey Blonder, Gary Goldstein, Michael Ciarlone and Robin Bailey as well as BARHONOVICH and Dr. Scott Levine (two of the new shareholders of FREEDOM who were issued shares authorized only by BORISH (*see* Exhibit D);

c.      a Certificate of Amendments to the By-Laws of FREEDOM dated May 19, 2011 and signed by BORISH (*see* Exhibit E); and

d.      Minutes of a June 18, 2011 meeting of the Board of Directors of FREEDOM (which meeting was attended by the members of the Board of Directors (other than Ted Doukas) elected at the May 18, 2011 meeting of shareholders and recorded via audio) (*see* Exhibit F).

26.     Pursuant to the settlement and related actions between May and June 2011, the following occurred:

a.      The number of Directors on the Board of Directors was increased so that there would be minimum of four (4) Directors serving on the Board at all times; the number of directors may only be

increased by a vote of 66% of the votes which all shareholders are entitled to cast (*see* Exhibits D and E);

b.  The following individuals were elected to the Board of Directors of FREEDOM for a term of three years: (i) BORISH, (ii) Michael Ciarlone, (iii) Harvey Blonder, (iv) Gary Goldstein, and (v) Ted Doukas (*see* Exhibits C and D);

c.  Harvey Blonder was elected to serve as Chairman of the Board of Directors (*see* Exhibit D);

d.  The By-Laws were amended so that a super-majority vote of the Board of Directors is required for taking of certain actions including but not limited to (i) the issuance of additional shares of FREEDOM, (ii) the pledging of shares of FREEDOM stock, including but not limited to warrants and stock options for the payment of debts, expenses or as collateral to loans for FREEDOM, its officers, directors or subsidiaries, and (iii) the incurring of any debts or expenses outside of the ordinary course of business of FREEDOM in excess of $25,000 (*see* Exhibits C and E);

e.  The By-Laws were amended to delete any ability of FREEDOM to issue preferred shares of stock (*see* Exhibits D and E);

f.  The amended By-Laws were approved by a unanimous vote of all voting shareholders (*see* Exhibit D);

g.    The Settlement Agreement was ratified and approved as binding upon FREEDOM, its shareholders, officers and directors as well as any other parties named therein (*see* Exhibit D);

h.    Any shares of preferred stock in FREEDOM previously issued would be null and void (*see* Exhibits C, D and E);

i.    FREEDOM and BORISH agreed to transparency regarding financial and corporate affairs of the company such that full disclosure would be made to the Board of Directors including Directors Harvey Blonder and Gary Goldstein (*see* Exhibit C);

j.    FREEDOM and BORISH agreed to provide Directors Harvey Blonder and Gary Goldstein with a full and accurate accounting documents including all cash, accounts receivable, bank accounts, account reconciliations, debts and accounts payable for FREEDOM, BP, Brownies, Grease Recovery Solutions LLC and any other entity that it owned or is currently in the process of being acquired by FREEDOM (*see* Exhibit C);

k.    FREEDOM stock was reapportioned, with an increase as necessary, such that BORISH, Harvey Blonder, Gary Goldstein, Michael Ciarlone and Robin Bailey each possess FREEDOM shares in amounts consistent with the ratios contemplated at the closing of the Purchase Agreement (whereby FREEDOM acquired the assets/business operations of B&P/Brownies which was formerly owned/controlled by Harvey Blonder, Gary Goldstein,

Michael Ciarlone and Robin Bailey).  In furtherance of this goal, all shares of FREEDOM stock issued to BORISH or Michael Ciarlone after July 17, 2010 were to be cancelled.  As a result, the total shares of FREEDOM stock owned by BORISH, Harvey Blonder, Gary Goldstein, Michael Ciarlone and Robin Bailey was 83% of the issued and outstanding shares (*see* Exhibit C);

l.      The employment agreements of BORISH and Michael Ciarlone were cancelled; and

m.      The Board of Directors elected the following to serve as Officers of FREEDOM:  Harvey Blonder, President; Robin Bailey, Vice-President; BORISH, Chief Executive Officer; Michael Ciarlone, Chief Operating Officer; John Davis, Treasurer; Gary Goldstein, Secretary (*see* Exhibit F).

**Again, documents confirming these matters (including the Settlement Agreement, Minutes of the May 18, 2011 shareholder meeting, and the Certificate of Amendments to the By-laws of Freedom dated May 19, 2011) were all signed by BORISH.  In other cases, there are audio recordings of the various meetings attended by BORISH.**

27.     Notwithstanding all of these agreed-upon changes to FREEDOM's Board of Directors, ownership, management and control, BORISH still would not end the hijacking of FREEDOM and did not stop treating FREEDOM like his own personal piggy-bank and as a vehicle to print money via the issuance of new -- but unauthorized -- shares in FREEDOM.

28.     Indeed, even after confirming that he is <u>not</u> the sole director/officer and party in control of FREEDOM, BORISH -- with the assistance and cooperation of the other defendants -- knowingly and intentionally continued unfettered in this corporate hijacking by operating FREEDOM and its business operations of FREEDOM in a manner directly contrary to what was agreed upon by the Board of Directors and the majority of the shareholders/owners, they continued to hide pertinent accounting and legal documents, they filed additional false reports with the SEC, they issued multiple false press releases, they continued to raid FREEDOM's coffers and they continued to improperly issued millions of shares of stock in FREEDOM to 'promoters', 'marketers' and 'consultants' of BORISH so that he/they could pocket the funds, dilute the business interest of the true owners/shareholders of the company.

29.     The 10Ks and 10Qs which have been filed by BORISH demonstrate that he has fraudulently issued FREEDOM stock to his cronies, co-conspirators and, in some instances, innocent parties under the guise that the stock in FREEDOM was being issued to 'consultants,' 'public relations firms,' 'investors,' 'lenders' and others.  For example, the following issuances are included in the 10K and 10Q filings which were signed by BORISH *after* the Purchase Agreement was executed and operational control of FREEDOM was to be transferred:

a.     In 2010, 12,400,000 shares of FREEDOM stock were issued to 'Consultants,' individuals or entities that provided no real services to FREEDOM;

13     .

b.  In 2010, more than 1,600,000 shares of FREEDOM were issued for "debt conversion" in sham transactions intended to disguise payments made to BORISH;

c.  In 2011, an additional 5,400,000 shares of FREEDOM stock was issued for "investor relations" -- again for non-existent services or for services of little or no value to FREEDOM;

d.  In excess of 12,000,000 shares of FREEDOM stock was issued by BORISH to Dr. Stanley Levine, in consideration of Levine "Loaning" FREEDOM $75,000 (money that, even if advanced by Dr. Levine, may never have been received by, or used for the benefit of, FREEDOM);

e.  In December 2011, BORISH issued an additional 5,000,000 shares of FREEDOM stock valued on the date of issuance at $250,000, to Marmel Communications, LLC for "public relation services" but, in reality, had no benefit to FREEDOM and was just part of the BORISH scheme to use corporate assets for their own benefit.

Most importantly, none of these transactions was authorized by FREEDOM's Board of Directors.

30.  In order to perpetrate his scheme, BORISH knowingly defied the directives of the majority of the Board of Directors and owners of FREEDOM.

31.  BORISH also utilized the services of ROWLAND who knowingly and fraudulently created fictitious financial documents and filings for the SEC and for stock promotions.

32.   BORISH also utilized the services of BARHONOVICH, who -- through a series of unauthorized transactions -- received shares of stock in FREEDOM while providing no value to FREEDOM and in exchange for assisting BORISH in accomplishing his scheme.

33.   BORISH also utilized the services of BERTHIAUME, who -- through a series of unauthorized transactions -- received shares of stock in FREEDOM or has an unauthorized "secret agreement" with BORISH to be given 15,000,000 shares of FRDM stock, while providing no value to FREEDOM and in exchange for assisting BORISH in accomplishing his scheme.

34.   Finally, BORISH was assisted by COLONIAL, the stock transfer agent which -- despite full knowledge of the facts outlined above -- knowingly and intentionally assisted BORISH in raiding the coffers of FREEDOM and improperly issuing millions of shares of stock in FREEDOM to 'promoters', 'marketers' and 'consultants' resulting in the dilution of the value and business interests of the true owners/shareholders of the FREEDOM.  COLONIAL was put on notice of the lack of authority of BORISH to act on behalf of FREEDOM but COLONIAL knowingly and willingly ignored this notice and continued to provide BORISH the authority to issue the unauthorized shares.

35.   Meanwhile, three of the five Directors of the duly elected Board of Directors (Harvey Blonder, Gary Goldstein and Ted Doukas) have been completely locked out of the corporation, denied access to the bank accounts, denied authority over FREEDOM's stock transfer agent and issuer, and denied access to corporate financial documents and books and records of FREEDOM.

36.     The validity of the settlement agreement and the fact that a five person board of directors was acting for FRDM, was finally recognized by BORISH in January 2012.

37.     A Board of Directors consisting of Harvey Blonder, Chairman of the Board, Gary Goldstein, Ted Doukas, BORISH, and Michael Ciarlone, took their seats as the Board of Directors.

38.     Pursuant to a unanimously passed Board of Director resolution, new SEC counsel, new auditors, and new CPA were engaged.

39.     Within months of the new board being elected, BORISH and the other defendants reverted to their old way of doing business. Millions of shares of stock were issued to defendant BARHONOVICH by BORISH; BORISH refused to make disclosures of the settlement agreement as drafted by SEC counsel to be included in a 8K as a material event; refused to provide comments to the requested disclosure showing why the disclosures were not correct; issued with Defendant BARHONOVICH unauthorized press releases; tries to improperly and in violation of the corporate by-laws, amend said by-laws to provide for a sixth director, the defendant BERTHIAUME; continued to pay himself unauthorized "salary" while refusing to show up and work; paid himself unauthorized benefits such as health insurance for himself and his family, automobile insurance and other non-authorized "perks".

40.     The Board of Directors held a meeting and terminated BORISH from his employment. BORISH has refused to "leave." He has alleged the board had no authority to terminate him, that the Board includes the defendant BERTIAUME and that, including his own vote, the vote terminating BORISH was three for termination and three against.

However, BORISH must abstain, and BERTHIAUME was not a properly elected director so the vote was three for termination and only one in favor of retaining BORISH.

41.     BORISH, BERTHIAUME, and BARHONOVICH once again have "hijacked" the company. They refuse to provide any accounting information to the board of directors not withstanding numerous requests; this includes monthly P&L's bank statements, account receivable and payable aging lists, and a budget.

42.     BORISH and his management "team" have refused to pay bills as they become due in the ordinary course of the business. This includes the bill of the auditing CPA firm GBH for the 2010 audit. As a result the 2010 audit has been withdrawn and a comment letter requested by the SEC. BORISH and his management "team" control the "check-book", they refuse to pay bills even when specific bills are directed by the Board of Directors to be paid.

43.     BORISH has refused to make the proper disclosures to the SEC, and in an attempt to prevent current SEC counsel or three of the Board members (Goldstein, Doukas, and Blonder) from making such disclosures, BORISH has -- with the defendants BERTHIAUME, and BARHONOVICH engaged in attempted extortion and libelous threats.

44.     The current majority of the Board of Directors has been unable to enforce its resolutions. It has been prevented from securing the business information upon which it can render informed decisions based upon exercising their business judgment.

45.     The current majority of the Board of Directors has been completely "shut down" as to proper disclosures to the SEC.

46.    As a result of the actions of the defendants, FREEDOM suffered substantial losses including lost value to its owners/shareholders and risk of substantial additional losses.

47.    FREEDOM is obligated to pay its attorneys a reasonable fee for their services in connection with this action.

## COUNT I - SECURITITES FRAUD
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder)

48.    FREEDOM adopts and realleges paragraphs 1 through 47 as if fully set forth herein.

49.    BORISH, COLONIAL, ROWLAND, BARHONOVICH, BERTHIAUME and JOHN DOES 1 THROUGH 5, by engaging in the conduct described above, directly and indirectly, in connection with the purchase and sale of securities, and by the use of the means or instrumentalities of interstate commerce or of the mails, or of the facilities of a national securities exchange, have:

a.    employed devices, schemes or artifices to defraud;

b.    made untrue statements of material facts or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or

c.    Engaged in acts, practices or courses of business that have operated or will operate as a fraud or deceit on FREEDOM, its owners/shareholders and upon other persons.

50.    BORISH, COLONIAL, ROWLAND, BARHONOVICH, BERTHIAUME and JOHN DOES 1 THROUGH 5 engaged in the conduct described above intentionally, knowingly or with severe recklessness.

51.    By reason of the foregoing, these defendants have violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

WHEREFORE, Plaintiff, FREEDOM ENVIRONMENTAL SERVICES, INC., demands judgment against Defendants, MICHAEL BORISH, COLONIAL STOCK TRANSFER COMPANY, INC., BRETT ROWLAND, MARC BARHONOVICH, REGINALD M. BERTHIAUME and JOHN DOES 1 THROUGH 5, jointly and severally, and that Plaintiff be granted all legal and equitable relief to which it may be entitled, together with prejudgment interest, reasonable attorneys' fees court costs and any other and further relief the Court deems just and proper.

## COUNT II - SECURITITES FRAUD
### (Violation of Section 17(a) of the Securities Act)

52.    FREEDOM adopts and realleges paragraphs 1 through 47 as if fully set forth herein.

53.    BORISH, COLONIAL, ROWLAND, BARHONOVICH, BERTHIAUME and JOHN DOES 1 THROUGH 5, by engaging in the conduct described above, directly and indirectly, in connection with the offer of sale of FREEDOM securities, and by the use of the means or instruments of transportation or communication in interstate commerce or of the mails, while acting with scienter, have:

    a.    employed devices, schemes or artifices to defraud;

b.     obtained money or property by means of untrue statements of material facts or omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; or

c.     Engaged in acts, practices or courses of business that have operated or will operate as a fraud or deceit on FREEDOM, its owners/shareholders and upon the purchasers of FREEDOM securities.

54.     BORISH, COLONIAL, ROWLAND, BARHONOVICH, BERTHIAUME and JOHN DOES 1 THROUGH 5 engaged in the conduct described above intentionally, knowingly or with severe recklessness.

55.     By reason of the foregoing, these defendants have violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act.

WHEREFORE, Plaintiff, FREEDOM ENVIRONMENTAL SERVICES, INC., demands judgment against Defendants, MICHAEL BORISH, COLONIAL STOCK TRANSFER COMPANY, INC., BRETT ROWLAND, MARC BARHONOVICH, REGINALD M. BERTHIAUME, and JOHN DOES 1 THROUGH 5, jointly and severally, and that Plaintiff be granted all legal and equitable relief to which it may be entitled, together with prejudgment interest, reasonable attorneys' fees court costs and any other and further relief the Court deems just and proper.

## COUNT III - CONVERSION

56.     FREEDOM adopts and realleges paragraphs 1 through 47 as if fully set forth herein.

57.     Between July 18, 2010 and the date of the filing of this lawsuit, BORISH has converted, and continues to convert, for his own use assets and monies which is legally owned by, and the rightful property of, FREEDOM.

WHEREFORE, Plaintiff, FREEDOM ENVIRONMENTAL SERVICES, INC., demands judgment against Defendant, MICHAEL BORISH, for damages resulting from his conversion together with prejudgment interest, court costs and any other and further relief the Court deems just and proper.

## COUNT IV - CIVIL THEFT

58.     FREEDOM adopts and realleges paragraphs 1 through 47 as if fully set forth herein.

59.     Between July 18, 2010 and the date of the filing of this lawsuit, BORISH stole money and other property belonging to FREEDOM.

60.     BORISH misappropriated corporate funds in the following manner:

A.     Taking unauthorized corporate funds disguised as "salary" in an amount exceeding $200,000, for services never rendered by BORISH.

B.     By taking of corporate funds disguised as "expenses" for non-corporate expenses or "phantom" expenses, such as automobile leases and payments, for vehicles owned or leased by BORISH and his spouse, insurance payments, interest reimbursement and numerous other payments that will be fully documented when the books and records of FREEDOM and "Brownies" are made available to the Plaintiff.

61.   BORISH knowingly obtained these funds (including those funds originally contained in the bank accounts of B&P/Brownies) with the felonious intent to, either temporarily or permanently, deprive FREEDOM, of the right to these funds and property and appropriated these funds/property for his own use in violation of § 812.014(1), *Florida Statutes.*

62.   As a result, FREEDOM has been injured due to the violation of § 812.014(1), *Florida Statutes,* and has lost the value of the funds/property, plus interest.

WHEREFORE, Plaintiff, FREEDOM ENVIRONMENTAL SERVICES, INC., demands judgment against Defendant, MICHAEL BORISH, for treble damages, together with prejudgment interest, reasonable attorneys' fees courts.

## COUNT V - BREACH OF FIDUCIARY DUTIES

63.   FREEDOM adopts and realleges paragraphs 1 through 47 as if fully set forth herein.

64.   The public filing of 10K's and 10Q's filed by BORISH disclose the following unauthorized transaction that specific constitute a breach of his fiduciary duty and corporate waste.

65.   As a result of the conduct of FREEDOM and BORISH, the trust reposed by FREEDOM in BORISH and BORISH's willing acceptance of such trust, and his positions as a Director and Officer of FREEDOM, he owed a fiduciary duty to FREEDOM.

66.   The fiduciary and trusting relationship required, as a matter of right, for BORISH not to mismanage or waste the company's assets, not to usurp the corporate identity for his own personal benefits, not to issue false statements or file false documents

with the SEC, not to act in a manner directly contrary to what was agreed upon by the Board of Directors and the majority of the shareholders/owners, not to hide pertinent accounting and legal documents, not to issue multiple false press releases, not to raid the corporate bank accounts, not to improperly issue millions of shares of stock in FREEDOM to promoters, marketers and 'consultants', not to dilute the business interests of the true owners/shareholders of the company and not to use FREEDOM as his own personal piggy bank.

67.     As outlined above, BORISH breached his fiduciary duties to FREEDOM to the detriment of FREEDOM, its shareholders and its investors.

68.     As a result of the breach of fiduciary duties as set forth herein, FREEDOM suffered damages.

WHEREFORE, Plaintiff, FREEDOM ENVIRONMENTAL SERVICES, INC., demands judgment against Defendants, MICHAEL BORISH, for damages together with prejudgment interest, court costs and any other and further relief the Court deems just and proper.

## COUNT VI - CIVIL CONSPIRACY

69.     FREEDOM adopts and realleges paragraphs 1 through 47 as if fully set forth herein.

70.     Defendants, BORISH, COLONIAL, ROWLAND, BARHONOVICH, BERTHIAUME and JOHN DOES 1 THROUGH 5, are parties to a civil conspiracy.

71.     Defendants, BORISH, COLONIAL, ROWLAND, BARHONOVICH, BERTHIAUME and JOHN DOES 1 THROUGH 5, conspired to file false reports and documents with the SEC and OTC Markets and also conspired to improperly issue shares

of stock in FREEDOM and to steal and/or convert those funds for Defendants' own use and benefit.

72.     These Defendants owed FREEDOM a duty to protect FREEDOM from these acts and the resulting losses suffered by FREEDOM.

73.     Each of the Defendants committed overt acts in furtherance of the conspiracy including, but not limited to the following:

        a.      BORISH and ROWLAND prepared the false reports and fictitious financial documents;

        b.      BARHONOVICH and BERTHIAUME knowingly received unauthorized shares of stock in FREEDOM;

        c.      BORISH, COLONIAL, ROWLAND, BARHONOVICH, BERTHIAUME and JOHN DOES 1 THROUGH 5 circulated the false reports and fictitious financial documents to potential investors, consultants, marketers and the general public; and

        d.      COLONIAL allowed BORISH to exercise full control over the issuance of additional shares of FREEDOM as well as transfer of shares to promoters, marketers and 'consultants' despite COLONIAL having the full knowledge that these issuances were unauthorized, illegal and improper.

74.     Defendants' conspiracy and their respective overt acts caused FREEDOM to suffer damages.

        WHEREFORE, Plaintiff, FREEDOM ENVIRONMENTAL SERVICES, INC., demands judgment against Defendants, MICHAEL BORISH, COLONIAL STOCK

TRANSFER COMPANY, INC., BRETT ROWLAND, MARC BARHONOVICH, REGINALD M. BERTHIAUME and JOHN DOES 1 THROUGH 5, jointly and severally, and that Plaintiff be granted all legal and equitable relief to which it may be entitled, together with prejudgment interest, reasonable attorneys' fees court costs and any other and further relief the Court deems just and proper.

## COUNT VII - ACTION FOR INJUNCTIVE AND EQUITABLE RELIEF

75.     FREEDOM adopts and realleges paragraphs 1 through 47 as if fully set forth herein.

76.     As explained above, BORISH, with the active participation and assistance of the other Defendants has/have hijacked the corporate entity and business operations of FREEDOM, raided its coffers and improperly issued millions of shares of stock in FREEDOM to promoters, marketers and 'consultants' of BORISH so that he/they could pocket the funds, dilute the business interest of the true owners/shareholders of the company and continue to use the FREEDOM as his own personal piggy bank.

77.     The clear legal rights of FREEDOM have been, and continue to be, violated by Defendants and FREEDOM has been, and continues to be, irreparably harmed.

78.     FREEDOM does not have an adequate remedy at law.

79.     There is a substantial likelihood that FREEDOM will succeed on the merits of its claims.

80.     The improper and unlawful conduct of Defendants alleged above is continuing and will continue in the future absent injunctive relief from the Court, and FREEDOM will continue to be damaged by same.

81.     In the absence of the entry of a preliminary and permanent injunction by the Court, FREEDOM will continue to suffer serious and irreparable harm and injury, including but not limited to damage to monetary losses, dilution of the value of its shares, dilution of its value, a tainted reputation and loss of business.

82.     The entry of a preliminary and permanent injunction will not unduly harm or burden Defendants as they are required as a matter of law to refrain from perpetrating the unlawful scheme which they have undertaken as described herein.

83.     Public policy favors the entry of a preliminary and permanent injunction because, *inter alia*, such relief will prevent unlawful conduct, will preserve and protect FREEDOM's reputation and value, protect the public and third-party stockholders in FREEDOM, protect the integrity of the OTC trading platform, promote business, thereby encouraging economic prosperity.

WHEREFORE, Plaintiff, FREEDOM ENVIRONMENTAL SERVICES, INC., demands the entry of a preliminary and permanent injunction barring Defendants, and/or anyone acting on their behalf, from:

      (1)    Issuing any shares of FREEDOM stock (whether common or preferred) without a super-majority vote of the five Directors on FREEDOM's Board of Directors;

      (2)    Pledging any shares of FREEDOM stock, including but not limited to warrants and stock options for the payment of debts, expenses or

as collateral to loans for FREEDOM, its officers, directors or subsidiaries without a super-majority vote of the five Directors on FREEDOM's Board of Directors;

(3)     Incurring any debts or expenses outside of the ordinary course of business of FREEDOM in excess of $25,000 without a super-majority vote of the five Directors on FREEDOM's Board of Directors;

(4)     Filing any documents with the U.S. Securities and Exchange Commission ("SEC") or the over-the-counter pink sheet trading platform ("OTC") including the filing of any documents with the "OTC Intelligence" service ("OTCIQ"); and

(5)     Issuing, or causing to have issued, any press releases on behalf of FREEDOM without a super-majority vote of the five Directors on FREEDOM's Board of Directors.

Plaintiff also requests that the injunction require:

(6)     That BORISH provide the Board of Directors, and each member thereof, with full and accurate accounting documents including all cash, accounts receivable, bank accounts, account reconciliations, debts and accounts payable for FREEDOM, BP, Brownies, Grease Recovery Solutions LLC and any other entity that it owned or is currently in the process of being acquired by FREEDOM;

(7)     That BORISH change any and all bank accounts for FREEDOM, BP, Brownies, Grease Recovery Solutions LLC and any other entity that FREEDOM owns or that is currently in the process of being acquired by FREEDOM such that all transactions on said bank accounts require the signature and approval of Harvey Blonder, President of FREEDOM and Chairman of the Board of Directors.

(8)     That BORISH cease conducting any business in the name of FREEDOM without the express consent of a supermajority of the duly elected members of the Board of Directors of FREEDOM;

(9)     That all Defendants be enjoined from violating, directly or indirectly, each of the provisions of law and rules alleged in this complaint;

(10)    That all Defendants disgorge all ill-gotten gains so that such money is paid to FREEDOM; and

Finally, FREEDOM requests that it be awarded its costs in this action and such other and further relief as this Court deems equitable, just and proper.

## COUNT VIII - ACTION FOR DECLARATORY RELIEF

84.     FREEDOM adopts and realleges paragraphs 1 through 47 as if fully set forth herein.

85.     The Board of Directors of FREEDOM has the sole authority to issue shares of stock in the company.

28

86.     ROWLAND, BARHONOVICH and BERTHIAUME claim that they are the rightful owner of shares of stock in FREEDOM.

87.     However, these shares of stock in FREEDOM were not issued under the authority of the Board of Directors of FREEDOM.

88.     FREEDOM seeks a declaration from this Court that any shares of stock issued to ROWLAND, BARHONOVICH and BERTHIAUME are null and void.

89.     FREEDOM states that, with regard to these shares of stock in FREEDOM:

    A.     there is a bona fide, actual, present practical need for the declaration;

    B.     the declaration concerns a present, ascertained or ascertainable state of facts or present controversy as to a state of facts;

    c.     an immunity, power, privilege or right of FREEDOM is dependent upon the facts or the law applicable to the facts;

    d.     FREEDOM, on the one hand, and ROWLAND, BARHONOVICH and BERTHIAUME, on the other hand, either has, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; and

    e.     These parties' antagonistic and adverse interests are before the court by proper process and the relief sought is not merely the giving of legal advice by the court or the answer to questions propounded from curiosity.

90.     In sum, there exists an actual controversy between the parties as to the past, present and continuing rights in any shares of stock in FREEDOM issued to ROWLAND, BARHONOVICH and/or BERTHIAUME and FREEDOM is entitled to

have its rights and those of ROWLAND, BARHONOVICH and BERTHIAUME determined by declaratory relief.

WHEREFORE, Plaintiff, FREEDOM ENVIRONMENTAL SERVICES, INC., requests that the Court:

a.   take jurisdiction and adjudicate the rights of the parties in these shares of stock in FREEDOM;

b.   declare that any shares of stock issued ROWLAND, BARHONOVICH and/or BERTHIAUME without the full authorization of the Board of Directors of FREEDOM are null and void;

c.   declare that said shares be returned to certificate form and surrendered to the company for return to treasury; and

d.   award Plaintiff its costs in this action and such other and further relief as this Court deems equitable, just and proper.

## DEMAND FOR JURY

FREEDOM ENVIRONMENTAL SERVICES, INC., demands trial by jury on all

issues so triable.

Dated this 1ˢᵗ day of May, 2012.

Respectfully submitted,

/s **Michael J. Scaglione, Esq.**
MICHAEL J. SCAGLIONE
Fla. Bar No. 0174970
**THE SCAGLIONE LAW FIRM, P.A.**
2600 Douglas Road, Penthouse 10
Coral Gables, Florida  33134
Telephone:    305-447-0392
Facsimile:     305-447-0389
mscaglione@sqlaw.com
*Trial Counsel for Plaintiff*

## VERIFICATION

We, the duly elected members of the Board of Directors of FREEDOM (who constitute a majority of the Board of Directors) hereby each make the following declaration:

1.   I, the undersigned, am a member of the Board of Directors of FREEDOM ENVIRONMENTAL SERVICES, INC., a Delaware corporation and have served in this capacity during all times material hereto.

2.   I have personal knowledge of the facts set forth herein and if called to testify as to these matters would do so competently.

3.   I verify under penalty of perjury under the laws of the United States of America that the facts set forth above are true and correct.

Executed on this _1st_ day of _May 2012_ .


_____
Harvey Blonder, Director,
Chairman of the Board of Directors & President
Freedom Environmental Services, Inc.

_____
Gary Goldstein, Director and Secretary
Freedom Environmental Services, Inc.

_____
Ted Doukas, Director
Freedom Environmental Services, Inc.

## VERIFICATION

We, the duly elected members of the Board of Directors of FREEDOM (who constitute a majority of the Board of Directors) hereby each make the following declaration:

1.  I, the undersigned, am a member of the Board of Directors of FREEDOM ENVIRONMENTAL SERVICES, INC., a Delaware corporation and have served in this capacity during all times material hereto.

2.  I have personal knowledge of the facts set forth herein and if called to testify as to these matters would do so competently.

3.  I verify under penalty of perjury under the laws of the United States of America that the facts set forth above are true and correct.

Executed on this 3th day of April 2012.

_____
Harvey Blonder, Director,
Chairman of the Board of Directors & President
Freedom Environmental Services, Inc.

_____
Gary Goldstein, Director and Secretary
Freedom Environmental Services, Inc.

_____
Ted Doukas, Director
Freedom Environmental Services, Inc.