# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FREEDOM ENVIRONMENTAL**
**SERVICES, INC.,**

           **Plaintiff,**

**-vs-**                                                            Case No. 6:12-cv-665-Orl-22DAB

**MICHAEL BORISH, COLONIAL STOCK**
**TRANSFER COMPANY, INC., BRETT**
**ROWLAND, MARC BARHONOVICH,**
**REGINALD M. BERTHAUME, and JOHN**
**DOES 1 THROUGH 5,**

           **Defendants.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause comes before the Court following an evidentiary hearing on the putative Plaintiff's Motion to Reopen the Case and to Strike Both the Notice of Appearance and the Unauthorized Voluntary Dismissal (Doc. 11) filed by Attorney Michael Scaglione, Esq. and the Response in Opposition to Motion to Reopen the Case (Doc. 12) filed by Attorney Gus R. Benitez, Esq.

The Court heard oral argument and evidence at a hearing on June 19, 2012. Based on the Court's review of the file, the testimony at the evidentiary hearing, and review of the Complaint, the Court respectfully **RECOMMENDS** that the two attorneys in the case, Attorney Michael Scaglione, Esq. and Attorney Gus R. Benitez, Esq. be **publicly reprimanded** for filing pleadings without the authority of the corporation, Freedom Environmental Services, Inc. to act on behalf of the corporation.

**I. Brief Background and Procedural History**

On May 2, 2012, three members of the Board of Directors[1] of Plaintiff Freedom Environmental Services, Inc. ("Freedom Inc."), filed a Verified Complaint against Freedom's Chief Executive Officer (Michael Borish) and others involved in selling Freedom Inc.'s stock alleging two counts of securities fraud (Counts I and II) and state law claims of conversion, civil theft, breach of fiduciary duties, civil conspiracy, injunctive, equitable, and declaratory relief (Counts III to VIII). Mr. Scaglione represents the Goldstein Group.

On May 31, 2012, individuals aligned with Borish including the Chief Operating Officer, Michael Ciarlone, commissioned Mr. Benitez to file a Notice of Voluntary Dismissal putatively by Freedom Inc. dismissing the case. Doc. 9. The following day, on June 1, 2012, Chief Judge Conway ordered the Clerk to close the file. Doc. 10. Mr. Scaglione filed a Motion to Reopen the Case (Doc. 11) and strike both the notice of appearance and the "unauthorized" voluntary dismissal filed by Mr. Benitez alleging that Mr. Benitez was not authorized to enter an appearance on behalf of Freedom Inc. and dismiss the case. Doc. 11. The Goldstein Group alleged that Mr. Benitez was "undoubtedly working for or on behalf of the Defendants in the case who have been hijacking the operations of Freedom Inc. and acting in direct violation of all of the documents signed by Borish." Doc. 11. They also alleged that Mr. Benitez was a business partner of Defendant Berthaume in at least one business venture, as well as the registered agent for many companies in which Defendant Berthaume is an officer or director. Doc. 11. The Goldstein Group alleged impropriety by Mr. Benitez in filing an appearance putatively on behalf of Freedom Inc. accompanied by a "voluntary" dismissal, rather than entering a proper appearance on behalf of the Defendants and then filing a motion to dismiss or contest the authority of the majority of the Board of Directors to bring suit on behalf of Freedom Inc.

---

[1] Gary Goldstein, Harvey Blonder, and Ted Doukas (collectively referred to as the "Goldstein Group"). Doc. 1-8 at 32-33.

-2-

Doc.11. On June 4, 2012, Mr. Benitez filed a Response contending that the lawsuit was voluntarily dismissed because it was unauthorized by Freedom, Inc. and the Motion to Reopen "falsely represented to the Court that [Freedom Inc.'s] Board of Directors authorized the lawsuit" in that the Board never scheduled, noticed or held a board meeting to discuss or approve the filing of the lawsuit. Doc. 12. Mr. Benitez also represented that the Board of Directors "is either a one member board or a six member board, but not a five member board as represented to this Court." Doc. 12. In response the Mr. Scaglione, representing the Goldstein Group, filed a Notice attaching an affidavit from Michael Ciarlone dated January 20, 2012, which referenced a prior lawsuit and settlement in state court and named *five* individuals who had been elected to the Board of Directors – the Goldstein Group, Borish and Ciarlone. Doc. 13 at 4.

Concerned about both counsel's and their clients' lack of authority to represent Freedom Inc., on June 6, 2012, the Court issued an Order to Show Cause:

> Based on the contents of the Motion to Reopen, the Response, and the Notice (Doc. 13), there are substantial questions as to what attorneys (if any) are authorized to act on behalf of the corporation and whether these attorneys have conflicts of interest. Counsel are cautioned that attorneys who have filed papers in this Court in excess of their authority or in violation of the rules of conduct may be subject to imposition of sanctions under Federal Rule of Civil Procedure 11 and other applicable provisions. Counsel may wish to bring their own representation to the Evidentiary Hearing, as well as any relevant witnesses.

Doc. 16.

The Court heard oral argument and evidence at an evidentiary hearing on June 19, 2012. Based on evidence introduced at the evidentiary hearing, the Court became concerned about its subject matter jurisdiction over the claims alleged in the case (if the case were to be reopened) and issued a Report and Recommendation that the case be dismissed. Doc. 18. When no objections were

timely filed, Judge Conway dismissed the case on June 28, 2012, reserving jurisdiction to consider whether either counsel acted without authority to file the case or dismiss it. Doc. 22.

**II. Finding of Fact and Conclusions of Law**

A. *Standard for Imposing Sanctions*

The court has the inherent power to manage the orderly and efficient disposition of the cases before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991). This "inherent power . . . can be invoked even if procedural rules exist which sanction the same conduct." *Id.* at 49, 111 S. Ct. at 2135. The Court's inherent power should be exercised with caution and its invocation requires a finding of bad faith. *Id.* at 50, 111 S. Ct. at 2136; *see also In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) ("Invocation of a court's inherent power requires a finding of bad faith."). In exercising its inherent power to impose sanctions, a court must "comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Chambers*, 501 U.S. at 50, 111 S. Ct. at 2136. When the individual being sanctioned is an attorney before the court, complying with the mandates of due process means that the attorney must, first, be afforded "fair notice that [her] conduct may warrant sanctions and the reasons why," and, second, "be given an opportunity to respond, orally or in writing, to the invocation of such sanctions and to justify [her] actions." *Mroz*, 65 F.3d at 1575–76 (citing *Donaldson v. Clark*, 819 F.2d 1551, 1559–60 (11th Cir. 1987)). The inherent power is to be used to fashion an "appropriate sanction." *Chambers*, 501 U.S. at 44, 111 S. Ct. at 2133; *see also Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) (noting that a court's inherent authority "includes the authority to impose 'reasonable and appropriate' sanctions") (citing *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545 (11th Cir. 1993)).

In addition or in the alternative, Federal Rules of Civil Procedure 11 authorizes sanctions in the form of attorney's fees for lawyer misconduct in the certification requirement for papers. Fed. R. Civ. P. 11; *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 42 n.8, 111 S. Ct. 2123, 2131 n.8, 115 L. Ed. 2d 27 (1991). "Although they differ by context, [these] sanctioning mechanisms are similar in that they are all rooted in the same basic goals—protecting the court and the public from litigation which impedes the administration of justice." *Byrne v. Nezhat*, 261 F.3d 1075, 1131 n. 110 (11th Cir. 2001).

B. *Factual findings related to counsel's authority to act*

The Goldstein Group, experienced businessmen, had become increasingly dissatisfied with the management of Freedom Inc. for some time. Freedom, Inc. is a publicly traded company on the over-the-counter market which merged in July 2010 with B&P Environmental Services, LLC, a privately held company, which owned the profitable subsidiary Brownies WasteWater Solutions, Inc.[2] Through a Purchase Agreement, which set forth the terms of the merger, certain individuals would be elected to an expanded Board of Directors where they would have voting control and they would receive a majority of the shares of Freedom Inc.

When the Goldstein Group believed that certain terms of the Purchase Agreement had not been met, they filed a lawsuit in December 2010 in state court seeking to exert increased control over management of the corporation through the Board of Directors and to halt the issuance of any new or additional stock, which had the effect of diluting the existing stock shares the Goldstein Group held. A few months later, in June 2011, the parties settled their dispute and executed a settlement agreement which, among other things, increased the number of Directors on the Board of Directors, allowing further increases only by a vote of 66% of the shareholders, electing the Goldstein Group

---

[2]Brownies had been a profitable business leading up to the merger, and Freedom Inc. was not profitable before or after the merger.

(Goldstein, Blonder, and Doukas), Borish, and Ciarlone to the Board, requiring a super-majority vote of the Board for issuance of additional share of stock or expenses in excess of $25,000[3]. Scaglione Ex. 1, 2. Unfortunately, despite reaching the settlement, the two Groups continued to disagree about the management of Freedom Inc. throughout the end of 2011 and the Goldstein Group felt shut out of the filing of documents with the Securities and Exchange Commission ("SEC").

In January 2012, Ciarlone approached the Goldstein Group about becoming more involved in management of Freedom Inc. related to the bank calling a loan to the corporation. Ciarlone signed an affidavit at that time setting forth the structure of the Board of Directors and officers. *See* Doc. 13. During an emergency meeting held by telephone on January 31, 2012, Mr. Scaglione was engaged as SEC counsel to assist with stock transfer and SEC reporting issues. Scaglione Ex. 5. According to Mr. Goldstein, in a vote taken on March 14, 2012, three of the five members of the Board of Directors voted to fire CEO Borish, but the minutes of this "meeting" were never transcribed. Borish was putatively fired on March 15, 2012. At a subsequent meeting when Borish represented Berthaume as the sixth Director, Mr. Goldstein was willing to allow the addition of a sixth director to "get peace." Berthaume was then copied on emails sent to "Board of Directors."

In early April 2012, Borish learned that Mr. Scaglione employed an allegedly-disbarred attorney, Michael D. Bon, in his office apparently doing paralegal work. Borish subsequently fired Mr. Scaglione as Freedom, Inc.'s attorney, which caused further disharmony with the Goldstein Group. Mr. Goldstein resigned as general counsel of Freedom Inc. on April 4, 2012 because Borish

---

[3]Borish remained as Chief Executive Officer and Michael Ciarlone as Chief Operating Officer, with Harvey Blonder as President.

refused to change certain financial statements being submitted to the SEC[4]. Benitez Ex. 6. On April 16, 2012 (although no longer Freedom Inc.'s general counsel), Mr. Goldstein advised Borish and Ciarlone that they should "substitute counsel [-] anyone you and Mike C[iarlone] as CEO and COO agree upon." Benitez Ex. 7. Defendants Borish and Berthaume retained Mr. Benitez on April 20, 2012.

The Goldstein Group filed suit in this Court two weeks later, on May 2, 2012, against Borish and several other Defendants for federal securities fraud and state claims, in actuality seeking to enforce the terms of the June 2011 settlement agreement from the state court litigation. On May 31, 2012, Freedom Inc. putatively removed Mr. Goldstein, Mr. Blonder, and Mr. Doukas from the Board of Directors.

### C. *Appropriate Sanction is Public Reprimand*

The Court's focus is whether either attorney, Mr. Scaglione or Mr. Benitez, had authority to act for the corporate entity, Freedom, Inc. As became abundantly clear from questioning by the Court, there was never a formal meeting of Freedom, Inc.'s full Board of Directors before the three directors in the Goldstein Group decided to file their federal securities lawsuit in this Court. No notice was ever given to the other two Directors of the five-member board, Borish and Ciarlone[5], who were not included in the decision to file the lawsuit, and in fact Mr. Borish was named as a Defendant and Goldstein Group considered naming Mr. Ciarlone as a potential defendant. Mr. Goldstein believed that no formal Board of Directors meeting was required because they were a "majority" with three

---

[4] Mr. Goldstein has apparently contacted the SEC about his concerns with the statements, inviting further investigation as a "whistleblower."

[5] Mr. Goldstein's testimony seemed to indicate that Mr. Berthaume had been added as a sixth director in March 2012 to "make peace." However, the minutes of the meeting from February 2012 to add Mr. Berthaume are not signed by the shareholders listed. Scaglione Ex. 6.

of the five members in favor of filing suit. But, of course, a group of individuals who happen to comprise a majority of a board cannot act as a board without following the legal requirements for board meetings. Mr. Scaglione believed, based on the June 2011 Settlement Agreement, that a majority of the five-member Board of Directors (the three in the Goldstein Group) had the authority to file suit on behalf of the corporation, although he did not review or know of any by-laws for the corporation that said the Board did not have to have a meeting or such a decision could be less than unanimous. Mr. Scaglione readily admits that no notice was provided to the two Directors (Borish and Ciarlone) before suit was filed; however, he argues that Borish would have to abstain since he would be a named Defendant. Particularly since everyone involved was well aware of the on-going intracorporate dispute over control, the failure to observe strictly all formalities and to document the same before undertaking the representation and filing a federal court lawsuit is insupportable.

Mr. Benitez likewise did not have the authority to act on behalf of Freedom Inc. in *dismissing* the lawsuit that he as counsel had not filed – as opposed to moving to dismiss it and leaving the decision to the Court to decided. Mr. Benitez was also aware that there was a contest over control of the Board of Directors; he listened to a recording of the March 14, 2012 Board of Directors meeting, but he knew that Ciarlone and Borish remained operating the company. Mr. Benitez researched Delaware corporations law and believed that the three Directors in the Goldstein Group did not have the authority to file the case to in effect sue the other Director, Borish, and putatively Berthuame, but that Ciarlone, as Chief Operating Officer, did have authority to hire counsel based on the April 14, 2012 email. Mr. Benitez contends that Mr. Ciarlone and Mr. Berthaume authorized him to file the dismissal of the lawsuit. As with Mr. Scaglione, the conduct of Mr. Benitez in purporting to act as counsel in federal court for the corporation as an entity without any clear idea who was entitled to act for the corporation and without consulting all potentially affected parties is confounding.

-8-

The Court is astounded by the poor management of this publicly-held company. The Board of Directors and officers, all of whom have a fiduciary duty to manage the corporation, have conducted themselves formally at times and very informally at other times, to such an extreme that it is not even clear the actual number of directors on the Board of Directors. Nevertheless, the unanimous consent of the Board of Directors was required to file any suit on behalf of the corporation, and failing compliance with the corporation's by-laws, or by default the statutory regulations governing Delaware corporations, a decision by less than the full Board of Directors as in this case, is ineffective as a decision by the corporation. Neither attorney, Mr. Scaglione nor Mr. Benitez, representing the feuding groups had authority to file the case or to *voluntarily* dismiss it (as opposed to seeking a court-ordered dismissal).

Moreover, Mr. Benitez, given his history of legal representation and business dealings with Mr. Berthaume, has a clear conflict of interest in representing the corporation contrary to Rule 4-1.8(a) of the Rules Regulating the Florida Bar.[6] Mr. Benitez testified that he has represented Mr. Berthaume in other lawsuits and he is Berthaume's business partner, owning a stake in other corporations as well as stock in Freedom Environmental Services, Inc. Mr. Benitez did not disclose to several of the Directors (Doukas and Blonder) that he had represented Berthaume or that he was in business with him.

---

[6]Conflict of Interest; Prohibited and Other Transactions:

(a) Business Transactions With or Acquiring Interest Adverse to Client. A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, *security, or other pecuniary interest adverse to a client*, except a lien granted by law to secure a lawyer's fee or expenses, unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of *independent legal counsel* on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

R. Regulating Fla. Bar 4-1.8(a).

Accordingly, it is respectfully **RECOMMENDED** that the two attorneys in the case, Attorney Michael Scaglione, Esq. and Attorney Gus R. Benitez, Esq. be **publicly reprimanded** for filing pleadings without the authority of the corporation, Freedom Environmental Services, Inc., to act on behalf of the corporation.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE** and **ORDERED** in Orlando, Florida on this 12th day of July, 2012.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record